THE WELLES-KAHN COMPANY, A CORPORATION, *Plaintiff in Error,* v. MAX KLEIN, *Defendant in Error.*

Opinion on Rehearing Filed April 12, 1921.

1. A verbal promise to pay a debt before the debt is barred by the statute of limitations will avoid the operation of the statute.

2. Section 1717, General Statutes, 1906, which provides that no new promise should be sufficient to take a case out of the operation of the statute unless it be made in writing confines the limitation to promises made after the debt is barred.

3. Where involuntary proceedings in bankruptcy are pending against one, and his creditors sign an agreement to accept a certain percentage of the debt due to each in full settlement and vote for a composition and then file a petition in the bankruptcy court setting up the agreement and ask for the discharge of the receiver and restitution of the debtor's property to him, and such petition is granted and the debtor pays the amount agreed upon to his creditors, but there was no examination in court of the debtor, or at a meeting of his creditors, nor that the court had called a meeting of creditors for allowance of claims, the examination of the bankrupt and presentation of his estate, no fixing of a date or designation of a place for a hearing, no order of confirmation by the judge, nor the consideration deposited in a place designated by the judge, nor subject to his order, nor distributed as directed by him, nor order dismissing the cause, the settlement is not a composition in bankruptcy, but a composition with creditors which discharges the debtor as to all who share under the composition.

4. A promise by the debtor orally or in writing to pay any one of his creditors who participated in such a composition, the remainder or balance unpaid must be supported by a valid and independent consideration.

A Writ of Error to the Court of Record for Escambia County; C. Moreno Jones, Judge.

Judgment affirmed.

*John C. Avery* and *John P. Stokes,* for Plaintiff in Error;

*Watson & Pasco,* for Defendant in Error.

ELLIS, J.—The declaration and pleas thereto are set out in full in the first opinion. There were five replications to the second plea and seven replications to the third plea. There was no issue joined upon the second plea—each replication sought to avoid the effect of that plea by alleging: First, that the defendant within three years after the accrual of the cause of action and within three years before the institution of the suit verbally promised to pay; second, that he promised within that time for a valuable consideration to pay; third, that the consideration was forbearance of the plaintiff to sue; fourth, that the defendant was in embarrassed circumstances, in consideration of which plaintiff and defendant agreed that defendant would pay "twenty-five per cent." on account and plaintiff would wait until defendant became able to pay the remainder. That the twenty-five per centum of the indebtedness was paid, leaving the balance sued for; that the payment was made within three years after the accrual of the indebtedness and within three years thereafter and before the institution of the suit defendant became able to pay the plaintiff; and fifth, after making the same allegations this replication continued with the further allegation that after the twenty-five per centum was paid, the defendant frequently confererd with the plaintiff about the balance due and promised the plaintiff to pay if the latter would continue his forbearance from suing the defendant, and that the plaintiff did forbear suing until after the expiration of three years.

The first replication to the third plea denied that there was an agreement between plaintiff and the other creditors as averred in the plea. Issue was joined by defendant on this replication.

The second replication to the third plea contains the allegations which present the real question which the parties desire to submit, and it is set out here in full:

"It never was agreed between plaintiff and the other creditors of defendant and the defendant as in the said plea alleged, except that, to-wit, on the 7th day of January, 1914, there was pending in the District Court of the United States for the Northern District of Florida, at Pensacola, in bankruptcy, a proceeding in involuntary bankruptcy, instituted by three creditors of the defendant, not including the said plaintiff, in which a receiver had been appointed, who was then, as such receiver, in-possession of all of the estate of the said defendant; that the said proceeding was taking its regular course under the Act of Congress regulating such actions; that upon the said day many of the creditors of the said defendant, including the said plantiff, for the purpose of effecting a composition for the said defendant, upon his request signed an agreement in writing in words and figures following:

" 'State of Florida,

   " 'Escamba County.

" 'The undersigned creditors of Max Klein, lately doing business as Klein Grocery Company and Magnolia Market, hereby agree to accept in full settlement of the liability of the said Max Klein, doing business as Klein Grocery Company and Magnolia Market, and to vote for composition for such amount, 25% of the principal sum to each of us.

" 'This January 7th, 1914.'

\*   \*   \*   \*   \*   \*

"That thereupon the petitioning creditors upon defendant's request in the said proceeding in involuntary

bankruptcy, filed a petition with the Judge of the said District Court of the United States for the Northern District of Florida, a copy whereof is hereto annexed, marked Exhibit 'A,' and made a part hereof; that thereupon the said Judge of the said district court made an order discharging the said reeciver, and directing him to return to the defendant the property held by such receiver as such as aforesaid, and the same was accordingly done, and no further proceedings were then, or afterwards, had in said cause in involuntary bankruptcy; that the said agreement was made, and proceedings had, for the purpose of accomplishing a composition of defendant with his creditors as ancillary to the said proceeding in bankruptcy, without further expense or delay; and that thereafter, and after defendant had paid to the plaintiff twenty-five per cent. of defendant's indebtedness to plaintiff, the defendant verbally promised to pay to plaintiff the balance of his indebtedness to plaintiff."

The third replication to the third plea denies that the defendant paid the twenty-five per centum to the plaintiff and other creditors in full settlement of the plaintiffs's claim. Issue was joined upon this replication.

The other replications were in substance as follows:

4th.   That the defendant did not pay the plaintiff and other creditors the 25% as averred.

5th.   That after the payment of the 25% as averred the defendant verbally promised to the plaintiff to pay the remainder.

6th.   That the defendant after the payment of the 25% verbally and for a valuable consideration promised to pay the remainder, and

7th.   That the defendant verbally promised to pay the plaintiff the remainder if the latter would refrain from

suing the defendant for the remainder which he admitted was due.

Demurrers were interposed to all the replications to the second plea and to all the replications to the third plea except the first and third, upon which issue was joined as stated.

The order of the court upon these demurrers omits all reference to the demurrer to the second replication to the second plea, and sustains the demurrers to the replications as mentioned in the order. It then recites that the plaintiff did not desire to amend or reply further, and withdrew by leave of court the "replications to which no demurrers have been filed and upon which issues have been taken." Judgment was then entered for the defendant. It is probable that the omission of reference in the order to the second replication to the second plea was by inadvertence. However, the record shows that there was no order upon the demurrer to that replication. That replication was as follows: "That within three years after the accrual of the said cause of action and within three years before the institution of this suit the defendant verbally and for a valuable consideration promised the plaintiff to pay the said indebtedness."

The plaintiff took a writ of error and assigned eleven errors. Each assignment is based upon the court's order sustaining the demurrers to the plaintiff's replications and attacks the order in so far as it applies to the particular replication which makes the subject of the particular assignment. These assignments include the supposed action of the court in sustaining the defendant's demurrer to the second replication to the second plea, and the entry of the judgment.

Now in order for the plaintiff in error to obtain a reversal of the judgment it is necessary to show that at least one replication was good to each plea. This proposition is conceded by the attorney for the plaintiff in error in the first brief filed in its behalf. And only two assignments of error are there discussed, which are the first and the sixth. The one attacking the order sustaining the demurrer to the first replication to the second plea, and the other the order in so far as it sustains the demurrer to the second replication to the third plea. All other assignments of error are abandoned because not argued.

The first question presented therefore is whether a verbal promise to pay a debt before the debt is barred by the statute of limitations will avoid the operation of the statute.

This question should be answered in the affirmative. The statutes of limitations is the outgrowth of a legal fiction which was applied by the courts before there was any statute on the subject. The fiction rests upon the theory that after a long lapse of time, during which the claimant makes no assertion of his rights in a personal demand, a presumption is raised that the obligation has been paid or discharged. It is said that the fiction was justified in the reasoning of the courts by the evident justness of its effects. See 17 R. C. L. 663.

The English Act, 21 James c16, which is made the basis of statutes of limitations in this country, makes no exception in those cases where an acknowledgment or a new promise or part payment has been made by the debtor. A judicial exception, however, was engrafted thereon at an early date—that a new promise of payment revived the cause of action. This conclusion was founded

upon the theory that the statute created simply a pre-sumption of payment or served only to extinguish the remedy. See 17 R. C. L. 887.

When a new promise is made to pay a debt before it is barred by the statute of limitations, the presumption of the statute is repelled and is in legal effect a promise to pay. The exception which the courts engrafted upon the early act did not provide that the new promise should be in writing, so that a verbal promise was sufficient if made either before or after the claim was barred. Then came Lord Tenterden's Act, 9 Geo. IV c14, by which it was enacted that no new promise should be sufficient to take a case out of the operation of the statute unless it was made in writing. Sec. 1717, General Statutes of Florida, 1906, Compiled Laws, 1914, confines this limitation to promises made after the debt is barred—and has no ap-plication to promises to pay made before the debt is barred. See Vinson v. Palmer, 45 Fla. 630, 34 South. Rep. 276.

The next question presented is the one arising upon the second replication to the third plea. The plea, which was copied in full in the first opinion, avers that the plaintiff and other creditors of the defendant, in January, 1917, agreed to accept 25% of the sum due each in full settlement; that pursuant to that agreement the defend-ant paid and the plaintiff accepted the payment of 25% of its claim in full settlement. The replication denies such an agreement, and then alleges what transpired and which the plaintiff argues did not operate to discharge its claims. There was in 1914 pending in the appropriate court a proceeding in involuntary bankruptcy against the defendant. A receiver had been appointed and was in possession of the defendant's estate, when the plaintiff

and many of defendant's creditors, for the purpose of effecting a composition for the defendant, signed an agreement to accept 25% of the sum due each of them in full settlement and vote for composition. A petition was then filed by those creditors upon whose petition the defendant was put into bankruptcy before the judge of the bankruptcy court in which it was alleged that they had filed the petition for the adjudication of the defendant as a bankrupt, and had also filed the petition for the appointment of a receiver, who had been appointed and was in possession of the defendant's estate. That the defendant Max Klein had offered to his creditors an advantageous settlement of their claims; that more than half of his creditors in number, and 85% in amount, had agreed to accept the settlement; that the petitioners intend to dismiss their petition, wherefore they prayed for an order discharging the receiver and directing him to turn over to Max Klein the custody of the property. The replication alleges that the order was made, the property redelivered to Klein and no further proceedings were taken or had in the cause. That after the defendant paid to the plaintiff 25% of its claim he verbally agreed to pay the plaintiff the remainder.

The plaintiff contends that the facts set out in his replication show a composition in bankruptcy, which merely discharges the remedy and does not extinguish the debt. Therefore the defendant's promise to pay was a valid one because it was supported by the consideration of the defendant's indebtedness. The defendant contends that the facts set out in the replication do not show a composition in bankruptcy, but does show a composition with the creditors of the defendant which was acted upon, and therefore operates as a total dis-

charge of the debtor as to all who share under the composition.

The replication contains no statement of facts which resemble a composition in bankruptcy other than the defendant was being proceeded against in bankruptcy. There is no allegation that the defendant had been examined in open court or at a meeting of his creditors and had filed in court a schedule of his property and list of his creditors; nor that the court called a meeting of the creditors for the allowance of claims, the examination of the bankrupt and preservation or conduct of his estate; there was no fixing of a date or designation of a place for the hearing; there was no order of confirmation by the judge. The consideration was not deposited in a place designated by the judge, nor was it subject to his order, nor distributed as he directed, nor was there an order of dismissal of the case.

The property of the defendant when it was returned to him by the receiver upon the court's order was not freed from the claims of all his creditors. The provisions of the Bankruptcy Act relating to composition are strictly construed because they are in derogation of the common law, compel any dissenting creditors to accept the percentage accepted by the majority and deprives them of their remedies on the balance thereafter. The essential purpose of the bankruptcy law is a pro rata distribution of the bankrupt's assets and a composition is upheld upon the theory that when executed in accordance with the conditions prescribed by the act, each creditor will obtain substantially as great a pro rata as he would through distribution in bankruptcy. See Collier on Bankruptcy, pp. 283-302.

The facts set up in the replication was but an attempt

to evade the provisions of the Bankruptcy Act relating to a composition. There are but two ways under the statute in which a bankrupt's estate can be wound up. First, by distribution in bankruptcy; second, by distribution in composition. The proceeding set out in the replication was neither. It was a mere agreement between the debtor and a number of his creditors to settle and discharge their claims. The consideration for each being the undertaking of the others. The agreement which was executed operated as a total discharge of the plaintiff's claim, therefore there was no consideration for the alleged promise to pay the balance. See 5 R. C. L. 868-871 and authorities cited. See also Note to Fox v. Hudson's Executors, 150 Ky. 115, 150 S. W. Rep. 49, reported in Ann. Cas. 1914A, 832-n838; Ex Parte Hall, 1 Deacon 171, (38 E. C. L. 426) ; Rasmussen v. State Nat. Bank, 11 Colo. 301, 18 Pac. Rep. 28; Phelps v. Dennett, 57 Me. 491.

There seems to be two lines of authorities upon the question whether a new promise after a discharge by voluntary act of the parties is valid without a new consideration, even when a portion of the debt is unpaid. We hold with what we consider the view of the greater number of the courts, that such a promise is not valid.

The assignment of error based upon the order sustaining the demurrer to the seventh replication to the third plea was abandoned.

The judgment is therefore affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur,